**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| SAMANTHA BESSER, on behalf of herself and all others similarly situated, | Civil Action No. 1:21-cv-01577-STV |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMAND** |
| SUNFLOWER BANK, N.A. | |
| Defendant. | |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff Samantha Besser, on behalf of herself and all others similarly situated brings this class action complaint against Sunflower Bank, N.A. ("Sunflower" or the "Bank"), and allege the following:

**INTRODUCTION**

1.      Plaintiff brings this action on behalf of herself and a class of all similarly situated consumers against Defendant Sunflower Bank, N.A. ("Defendant" or "Sunflower"), arising from Defendant's routine practice of assessing two or more non-sufficient funds fees ("NSF Fees") or overdraft fees ("OD Fees") on a single transaction

2.      Sunflower's improper scheme to extract funds from accountholders has victimized Plaintiff and thousands of other similarly situated consumers. Unless enjoined, Defendant will continue to engage in this scheme and continue to cause substantial injury to its consumers.

3.      While there is nothing unlawful about assessing OD Fees on accounts when such fees are assessed in compliance with contractual terms, OD Fees in general have a crushing impact

on persons living paycheck to paycheck. This is why the financial services industry is increasingly moving away from such fees.

4.      For example, one of the nation's largest consumer banks, Ally Bank recently stopped assessing overdraft fees altogether. Diane Morais, Ally Bank's president of consumer and commercial banking, said that one reason is because OD Fees disproportionately affect people who are living paycheck to paycheck and that OD Fees disproportionately affect Black and Latino households. *Overdraft Fees Are Getting the Boot at Ally Financial*, The Wall Street Journal (June 2, 2021), https://www.wsj.com/articles/overdraft-fees-are-getting-the-boot-at-ally-financial-11622631600 (last accessed June 4, 2021).

5.      Indeed, Black households and those with low-to-moderate incomes are almost twice as likely to incur OD Fees as white households or those with higher incomes, according to a report from the Financial Health Network, a research firm partly funded by financial institutions.

## PARTIES

6.      Plaintiff Samantha Besser is a citizen and resident of Kansas.

7.      Defendant Sunflower is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes. Sunflower has its headquarters in Denver, Colorado and operates banking branches in Colorado, New Mexico, Washington, Texas, Arizona, Missouri, and Kansas.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of

the proposed class resides outside of Colorado; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Sunflower is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

<strong><u>FACTUAL BACKGROUND AND GENERAL ALLEGATIONS</u></strong>

<strong><u>SUNFLOWER CHARGES MORE THAN ONE NSF FEE ON THE SAME ITEM</u></strong>

10.     The account documents, including the *Understanding Overdraft Privilege* agreement ("Overdraft Agreement") and *Deposit Account Terms and Conditions* ("Deposit Agreement") (together, the "Account Documents"), provide the general terms of Plaintiff's relationship with Defendant.

11.     Sunflower breaches its Account Documents with its accountholders by charging more than one $36 NSF Fee or OD Fee on the same item, since its contract explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF or OD Fee.

12.     Sunflower's abusive practices are not standard within the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country— charge one NSF Fee per item, even if that item is resubmitted for payment multiple times. And while some other banks engage in the same practices as Sunflower, they clearly disclose those charges in the deposit agreements with their customers.

13.     Sunflower's Account Documents do not say that Sunflower repeatedly charges customers multiple NSF Fees or OD Fees on a single item. To the contrary, the Account Documents indicate it will only charge a single NSF Fee or OD Fee on an item.

A. **Plaintiff's Experience.**

14.     In support of her claims, Plaintiff offers examples of fees that should not have been assessed against her checking account. As alleged below, Sunflower: (a) twice reprocessed previously declined electronic transactions that they made; and (b) charged an additional fee upon reprocessing.

15.     As an example, in September of 2016, Plaintiff attempted a payment *via* ACH to Hanover Citizens.

16.     Sunflower rejected payment of that item due to insufficient funds in Plaintiff's account and charged Plaintiff a $34.97 NSF Fee for doing so. Plaintiff does not dispute this initial fee, as it is allowed by Sunflower's Account Documents.

17.     However, unbeknownst to Plaintiff, and without her request to Sunflower to reprocess the item, Sunflower processed the same item yet several days later. The payment was marked as a RETRY PYMT on Plaintiff's statements. Again, Sunflower returned the item unpaid and charged Plaintiff *another* $34.97 NSF Fee for doing so.

18.     In sum, Sunflower assessed Plaintiff almost $70 in fees in its effort to process a single transaction.

19.     Plaintiff understood the payment to be a single item or transaction as is laid out in Sunflower's contract, capable at most of receiving a single NSF Fee (if Sunflower returned it) or a single OD Fee (if Sunflower paid it).

B. **The Imposition of Multiple NSF Fees on a Single Item Violates Sunflower's Express Promises and Representations.**

20.     Defendant's Account Documents provide the general terms of Plaintiff's relationship with Sunflower and therein Sunflower makes explicit promises and representations

regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

21.     During the relevant time period, the Account Documents did not indicate that multiple fees may be assessed against a single item or transaction. Regardless, Sunflower regularly charged two or more fees per item or transaction. In fact, Defendant's Deposit Agreement states:

> **OVERDRAFTS AND UNAVAILABLE FUNDS**. If you write a c heck or other payment order or otherwise request a withdrawal from your account, such as by setting up electronic payments, using an ATM or making a purchase using a Debit Card or ATM Card, for more money that you have available for withdrawal, we may either permit you to withdraw the funds by complying with the payment order or we may refuse to honor the payment order. This is true even if you have opted into Sunflower Bank's Overdraft Protection, which authorizes us to pay ATM withdrawals or transfers and one-time POS purchases and assess the applicable overdraft fees.
>
> If the payment order is an ATM withdrawal or transfer or a one-time POS purchase, you may incur a fee for each payment order that is presented against your account when you do not have sufficient available funds; if you have opted into Sunflower Bank's Overdraft Protection; and we pay one of these payment orders. If you are not enrolled in Sunflower Bank's Overdraft Protection, we will generally decline these transactions when you do not have sufficient available funds, but in the event any such payment order is paid, no insufficient or unavailable overdraft fee will be assessed.
>
> For all other payment orders, you may incur a fee for each payment order that is presented against your account when you do not have sufficient available funds regardless of whether the payment order is paid or returned. You can avoid overdrafts by making sure you have sufficient available funds in your account to pay all your payment orders. Because there is a delay in the availability of checks you deposit to your account, you should be familiar with our Funds Availability Policy in part VI of this Agreement.
>
> We will not be liable to you if we choose to honor a payment order that is presented against insufficient available funds. If we honor your payment order, such as by permitting you to withdraw cash from an ATM or paying a check, you agree to pay us the amount of any overdraft fees we assess immediately. If you fail to pay an overdraft that has occurred on your account, we may report this information to a consumer reporting agency. If we take any legal action to collect any amount that you owe us, such as filing a lawsuit, you will pay our reasonable expenses, including attorney's fees.

> If your checking account is a joint account, each owner is responsible for any overdraft created regardless of whose payment order caused the overdraft. We may enforce our rights to be reimbursed for any overdraft against one, some or all owners of a joint account, but will not [sic] required to do so.

Ex. A, Deposit Agreement at 12.

22.     Furthermore, Sunflower's Overdraft Agreement states that the Bank will assess a single fee of $36 for an item that is returned due to insufficient funds, and expresses incredulity at the idea that a customer could incur two fees for a transaction that was not paid:

> For example, suppose you do not have Overdraft Privilege and your account balance is $50. **If you have a debit item for $100, Sunflower Bank, N.A. will charge your account a fee (currently \*$36.00) for having an item with insufficient funds, and will then return the item if adequate funds aren't available**. In most cases, the establishment where you made the transaction will require you to pay for the item and will normally charge you a fee (usually around $30) **for writing an insufficient item**. **This means that you have now incurred two fees** (\*$36.00 at Sunflower Bank, N.A. and $30 at the merchant) **for an item that wasn't even paid!**
>
> . . .
>
> If an overdraft occurs, ***your account will be charged an Overdraft fee of \*$36.00 for every item***, even if multiple items are presented on the same day. **This is the same fee that we charge for insufficient items returned to the payee**[.]

Ex. B, Overdraft Agreement (emphasis added).

23.     The same transaction or "item" on an account is not a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

24.     Even if Sunflower reprocesses an instruction for payment, it is still the same item. The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

25.     During the relevant time period, the Account Documents never discussed a circumstance where Sunflower may assess multiple NSF or OD Fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again.

26.     In sum, Sunflower promises that one $36 NSF Fee or one $36 OD Fee will be assessed per "item," and this must mean all iterations of the same instruction for payment. As such, Sunflower breached the contract when it charged more than one fee per item.

27.     A reasonable consumer would understand that Sunflower's Account Documents permit it to assess an NSF Fee only once per item.

28.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "transaction" or "item," which the Bank will either pay (resulting in an overdraft item) or return (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Sunflower disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Sunflower customers ever agree to such fees.

29.     Customers reasonably understand, based on the language of Sunflower's account documents, that the bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same item.

30.     For the first time ever, in November of 2020, Sunflower amended its Deposit Agreement to state that accountholders may incur multiple fees if the same item is presented multiple times. *See New Deposit Account*, Sunflower Bank First National 1870 6, https://www.sunflowerbank.com/depositaccountterms (last accessed June 4, 2021).

31.     As Sunflower discovered by November of 2020, other banks like Sunflower that employ this abusive multiple-fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Sunflower does not no do nor ever did.

32.     For example, First Hawaiian Bank engages in the same abusive practices as Sunflower, but at least discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://bit.ly/2KWMvTg (last accessed Jan. 28, 2021) (emphasis added).

33.     Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer Account Terms and Conditions*, Klein Bank 4 (Jan. 2013), https://bit.ly/2KVCkhI (emphasis added).

34.     Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a

$32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

*Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Jan. 4. 2021),

https://www.cpb.bank/media/2776/fee-001.pdf (last accessed June 4, 2021).

35.     Regions Bank likewise states:

If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

*Deposit Agreement*, Regions Bank 18 (2018), https://bit.ly/2L0vx6A (last accessed June 4, 2021).

36.     Andrews Federal Credit Union states:

You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Terms & Conditions*, Andrews Federal Credit Union 17 (Aug. 2020), ¶ 6, https://bit.ly/3iXEdHb

(last accessed June 4, 2021).

37.     Consumers Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Member Services Guide*, Consumers Credit Union 5 (Apr. 2020), ¶ 11a, https://bit.ly/3iVM1ta

(last accessed June 4, 2021).

38.    Wright Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information*, Wright Patt Credit Union 13 (July 2020), ¶ 6.1, (last accessed

June 4, 2021).

39.    Railroad & Industrial Federal Credit Union states:

Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information for Our Members*, Railroad & Industrial Federal Credit Union, p. 2, (Aug. 1, 2019), https://bit.ly/3t5ehhF (last accessed June 4, 2021).

40.    Partners 1st Federal Credit Union states:

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Consumer Membership & Account Agreement*, Partners 1st Federal Credit Union, p. 11 (Sept. 15, 2019), https://bit.ly/39pDZWb (last accessed March 2, 2021).

41.    Members First Credit Union states:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the

transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment[.]

*Membership and Account Agreement*, Members First Credit Union of Florida 3,

https://bit.ly/39rRJ2Y (last accessed March 2, 2021).

42.     Community Bank, N.A. states:

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank 5 (Nov. 12, 2019),

https://bit.ly/3iY9dH2 (last accessed June 4, 2021).

43.     RBC Bank states:

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

*Service Agreement for Personal Accounts*, RBC Bank 13 (Sept. 17, 2014), https://bit.ly/3otUtko

(last accessed June 4, 2021).

44.     Diamond Lakes Credit Union states,

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

*Membership and Account Agreement*, Diamond Lakes Federal Credit Union,

https://bit.ly/39o2P94 (last accessed June 4, 2021).

45.     Parkside Credit Union states,

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

*Membership and Account Agreement*, Parkside Credit Union 21 (Jan. 30, 2020), https://bit.ly/3aaXfpG (last accessed March 2, 2021).

46.     Sunflower provided no such disclosure before November 2020, and in so doing, breaches its contracts with accountholders, engages in bad faith conduct, and deceives its accountholders.

**C.     The Imposition of Multiple NSF Fees or OD Fees on a Single Item Breaches Sunflower's Duty of Good Faith and Fair Dealing.**

47.     Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Sunflower is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Sunflower has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the adhesion agreements Sunflower foisted on Plaintiff and its other customers—Sunflower has provided itself numerous discretionary powers affecting customers' bank accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the bank abuses that discretion to take money

out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

48.     Sunflower exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines "item" in a way that directly leads to more NSF Fees. Further, Sunflower abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under its account documents. This is a breach of Sunflower's implied covenant to engage in fair dealing and act in good faith.

49.     By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one OD Fee or NSF Fee on a single item, Sunflower breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

50.     It was bad faith and totally outside Plaintiff's reasonable expectations for Sunflower to use its discretion to assess two or three OD Fees or NSF Fees for a single attempted payment.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23. The proposed class is defined as:

> All persons who, within the applicable statute of limitations period before July 1, 2020, were charged multiple fees for the same item or transaction in a Sunflower checking account.

52.     Excluded from the Class are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such

excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

53.    Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

54.    The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because Sunflower has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

a)    Whether Sunflower improperly charged multiple fees on a transaction;

b)    Whether the conduct enumerated above violates the contract;

c)    Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

d)    The appropriate measure of damages.

55.    The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Sunflower's records. Sunflower has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

56.    It is impracticable to bring members of the Class individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary

duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

57.     Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Sunflower, as described herein.

58.     Plaintiff is more than adequate representative of the Class in that Plaintiff is a Sunflower checking accountholder and has suffered damages as a result of Sunflower's contract violations. In addition:

  a)     Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

  b)     There is no conflict of interest between Plaintiff and the unnamed members of the Class;

  c)     Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

  d)     Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

59.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

60.     Sunflower has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

61.     All conditions precedent to bringing this action have been satisfied and/or waived.

**BREACH OF CONTRACT INCLUDING THE**
**COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Individually and on Behalf of the Class)**

62.     Plaintiff realleges the preceding paragraphs as if fully set forth herein.

63.     Plaintiff and Sunflower contracted for checking account services, as embodied in Sunflower's Account Documents.

64.     Sunflower breached the terms of the contract.

65.     Plaintiff and members of the putative Class have performed all of the obligations on them pursuant to the Bank's agreements.

66.     Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches.

67.     A covenant of good faith and fair dealing is implied in contracts between financial institutions and their members as a matter of state law in nearly every state. Moreover, the UCC mandates good faith and fair dealing in all banking contracts. The covenant of good faith and fair dealing constrains Sunflower's discretion to exercise self-granted contractual powers.

68.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

69.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

70.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes her conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good

faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

71.     Sunflower breached the covenant of good faith and fair dealing as explained herein.

72.     Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

73.     Plaintiff and members of the putative Classes have performed all of the obligations imposed on them pursuant to the Deposit Agreement.

74.     Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

A.     Certification for this matter to proceed as a class action on behalf of the Class;

B.     Declaring Sunflower's OD Fee policies and practices to be in breach of its contract with accountholders;

C.     Restitution of all OD Fees and improperly assessed paid to Sunflower by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

D.     Actual damages in an amount according to proof;

E.     Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

F.     For costs and attorneys' fees as permitted by law; and

G.     Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this

Class Action Complaint that are so triable.

Dated:  September 13, 2021                    Respectfully submitted,


                                    By:*/s/ Jeffrey D. Kaliel*
                                        Jeffrey D. Kaliel
                                        **KalielGold PLLC**
                                        1100 15th Street NW, 4th Floor
                                        Washington, D.C.  20005
                                        (202) 350-4783
                                        *jkaliel@kalielpllc.com*

                                        Sophia G. Gold
                                        **KalielGold PLLC**
                                        950 Gilman Street, Suite 200
                                        Berkeley, CA 94710
                                        (202) 350-4783
                                        sgold@kalielgold.com

                                        David Berger (to seek *pro hac vice* admission)
                                        Tayler Walters (to seek *pro hac vice* admission)
                                        **GIBBS LAW GROUP LLP**
                                        501 14th Street, Suite 1110
                                        Oakland, CA 94612
                                        Telephone: (510) 350-9700
                                        Facsimile: (510) 350-9701
                                        dmb@classlawgroup.com
                                        tlw@classlawgroup.com

                                        *Attorneys for Plaintiff and the Putative Class*

18